The STATE of Ohio, Appellee,

v.

DIXON, Appellant.

[Cite as *State v. Dixon* (2001), 141 Ohio App.3d 654.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–2000–34.

Decided March 28, 2001.

*Alan N. Hale,* for appellee.

*Daniel J. LaRoche,* for appellant.

HADLEY, Judge.

The defendant-appellant, Danny Ray Dixon ("the appellant"), appeals from a judgment of the Logan County Court of Common Pleas denying his motion to suppress the evidence seized as a result of the search of his residence. For the following reasons, we reverse the judgment of the trial court.

The pertinent facts and procedural history of the case are as follows. On the evening of May 4, 2000, six uniformed SWAT team members of the Bellefontaine Police Department executed a search warrant on the appellant's residence in Bellefontaine, Ohio. In execution of the warrant, the officers proceeded to the appellant's front door. Officer Jim Tetrich knocked on the appellant's door and announced "Bellefontaine Police Department, search warrant." The force of Officer Tetrich's knock caused the door to partially open. For a second time, Officer Tetrich announced "Bellefontaine Police Department, search warrant." Through the partially open door, the officers observed several individuals in a room located on the first floor of the home.

Immediately thereafter, the officers entered the home through the partially open door. At that time, the officers conducted a protective sweep of the entire residence. The officers eventually found the appellant sitting on a couch in an upstairs bedroom. The ensuing search of the home resulted in the seizure of 435.1 grams of marijuana and miscellaneous drug paraphernalia.

As a result of the search of the appellant's home, on June 12, 2000, the appellant was indicted by the Logan County Grand Jury on one count of possession of drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree. On September 1, 2000, the appellant challenged the legality of the execution of the search warrant. In his motion to suppress, the appellant alleged that the

search was unlawful because the officers had failed to wait an adequate time after knocking and announcing their presence before entering the home.

On September 19, 2000, a suppression hearing was held in the Logan County Court of Common Pleas. By judgment entry of October 5, 2000, the trial court overruled the appellant's motion to suppress by finding that the officers' actions were reasonable on the basis that the occupants of the home had constructively refused their entry into the home.

On October 9, 2000, pursuant to a negotiated plea agreement, the appellant pleaded no contest to one count of possession of drugs. The trial court accepted the appellant's plea and found him guilty of the offense as charged in the indictment.

A sentencing hearing was held on September 13, 2000. At the conclusion of the sentencing hearing, the appellant was sentenced to a term of imprisonment of six months.

The appellant now appeals, asserting the following sole assignment of error for our review.

*Assignment of Error*

"The trial court erred in finding a constructive refusal where: (1) only 10 to 15 seconds had elapsed between the time of the knock-and-announce by police; (2) the search was conducted at night; (3) there is no evidence to indicate that the Defendant had a prior criminal record; (4) there is no evidence to indicate that the Defendant's residence had ever been searched before; and (5) no adults were in a position to answer the door in the time allowed by police."

In his sole assignment of error, the appellant maintains that the trial court erred in overruling his motion to suppress. The appellant argues that the search was unlawful because the officers did not properly execute the search warrant. For the following reasons, we agree.

Initially, we note that appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, *e.g., State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965, 973; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982, certiorari denied (1992), 505 U.S. 1227, 112 S.Ct. 3048, 120 L.Ed.2d 915, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. The weight of the evidence is also primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; *State v. Smith* (1997), 80 Ohio St.3d

89, 105, 684 N.E.2d 668, 685; *State v. Brooks* (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030, 1036–1037; *Fanning*, 1 Ohio St.3d at 20, 437 N.E.2d 583.

A reviewing court must accept a trial court's factual findings.if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 726–727. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036. That is, we must review the trial court's application of the law de novo. *Id.*

R.C. 2935.12 sets forth Ohio's knock and announce procedures. The statute prohibits law enforcement officers from forcibly entering the premises to be searched unless certain requirements are met. The statute provides:

"When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant * * *, the peace officer * * * making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer * * * executing a search warrant shall not enter a house or building not described in the warrant."

The provisions stated herein make it clear that it applies only when an officer makes a forced entry by breaking down a door or window. Here, the officers knocked and announced their presence and then entered the home through the unlocked door that had become ajar. Because the officers did not have to break down the door or break a window to effectuate the arrest, R.C. 2935.12 does not apply to the case herein.

Although the officers did not violate R.C. 2935.12, the appellant nonetheless asserts in his brief that the search was unlawful. The appellant's claim is premised upon his state and federal constitutional rights to be free from unreasonable searches and seizures.

The Fourth Amendment to the United States Constitution requires law enforcement officers to execute search warrants in a reasonable manner. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures". In determining whether law enforcement officers executed a search warrant in a reasonable manner, one aspect that courts must consider is the procedure in which the search warrant was executed. In *Wilson v. Arkansas* (1995), 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976, the United States Supreme Court interpreted the Fourth Amendment to incorporate the common-law principle of "knock-and-announce" prior to entering a residence. The court held that whether law

enforcement officers properly complied with the knock-and-announce procedures forms part of the reasonableness inquiry under the Fourth Amendment. *Id.* In other words, an officer must act reasonably.

The same protections hold true even if the door is ajar. A partially open door with an occupant standing therein, without exigent circumstances, does not diminish or vitiate the protection afforded by, and the values inherent in, the Fourth Amendment. *State v. Campana* (1996), 112 Ohio App.3d 297, 303, 678 N.E.2d 626, 629–630; *State v. Davies* (Jan. 8, 1986), Hamilton App. Nos. C–850112, C–850113, C–850128 and C–850129, unreported, 1986 WL 657.

Once an officer has properly knocked and announced his presence, he may enter the premises upon refusal to admit. A refusal to admit may be actual or constructive. See *State v. Valentine* (1991), 74 Ohio App.3d 110, 113, 598 N.E.2d 82, 84; *State v. DeFiore* (1979), 64 Ohio App.2d 115, 411 N.E.2d 837. Officers are constructively refused admittance when the occupant of the premises fails to respond to the officers within a reasonable period of time. See *United States v. Moore* (C.A.10, 1996), 91 F.3d 96, 98; *People v. Riddle* (1994), 258 Ill.App.3d 253, 196 Ill.Dec. 444, 630 N.E.2d 141. Once a reasonable period of time has elapsed, the officers may enter the premises.

Whether police officers paused long enough before admitting themselves into a home entails " 'a highly contextual analysis, [requiring] examin[ation of] all the circumstances of the case.' " *United States v. Spikes* (C.A.6, 1998), 158 F.3d 913, 926, quoting *United States v. Bonner* (D.C.Cir. 1989), 874 F.2d 822, 824. For example, the knock-and-announce principle need not be strictly followed if exigent circumstances exist which require otherwise. *State v. Boyd* (May 21, 1993), Montgomery App. No. 13425, unreported, 1993 WL 169104, citing *DeFiore,* 64 Ohio App.2d at 119, 18 O.O.3d at 92, 411 N.E.2d 837, 839–840. Exigent circumstances include situations where the officers believe that evidence can and will be destroyed quickly on short notice or that compliance could place the officers in jeopardy. *State v. Southers* (June 8, 1992), Stark App. No. CA–8682, unreported, 1992 WL 127164; *DeFiore,* 64 Ohio App.2d at 118–119, 18 O.O.3d at 91–92, 411 N.E.2d at 839–840; *Boyd, supra.*

Having set forth the applicable law with regard to "knock and announce" procedures, we must now determine whether the trial court erred in overruling the appellant's motion to suppress. We first note that neither party disputes whether the officers properly knocked and announced their presence. Rather, the center of the dispute revolves around whether the officers waited a sufficient period of time before entering the appellant's home and whether there were exigent circumstances present which would justify their noncompliance. The trial court found that the officers did properly knock and announce their purpose

and that enough time had elapsed before they entered the home to permit them to infer that their admittance was constructively refused.

At the suppression hearing held on September 19, 2000, Officer Jim Tetrich testified that he and his fellow officers entered the appellant's home immediately after they had made their second announcement. According to Tetrich, the second announcement was made approximately ten to fifteen seconds after the initial knock and announce. Meanwhile, Officer Brandon Stanley testified that, in total, only fifteen to twenty seconds had elapsed between the initial knock and announce and their subsequent entry into the home. Although Officer Tetrich testified that there was a lot of "commotion" at the scene, the only individuals located on the first floor of the home were the appellant's girlfriend and three young children. In fact, Officer Sebring testified that the only individuals he observed prior to entering the home were several screaming children. Given all of these circumstances and that the search was conducted at such a late hour, we cannot say that such a scene was unexpected. Therefore, we cannot in good conscience say that there was a constructive or actual refusal to admit.

There was also no factual basis established on the record that evidence would be destroyed in this case particular case if the officers' entry was delayed. Some courts have held that where the evidence sought can easily and quickly be destroyed, the police may bypass the requirements of the knock and announce principle. See, *e.g., State v. Roper* (1985), 27 Ohio App.3d 212, 213, 27 OBR 252, 252–253, 500 N.E.2d 353, 354–355. The majority of jurisdictions, however, have held that articulable facts must be introduced which prove that in the particular case there is a strong probability that evidence will be destroyed. See, *e.g., DeFiore*, 64 Ohio App.2d at 119, 18 O.O.3d at 92–93, 411 N.E.2d at 839–840; *Valentine*, 74 Ohio App.3d at 117–118, 598 N.E.2d at 86–88. In other words, the police must have reason to believe that the evidence will be destroyed, based upon other factors uniquely present in the present circumstances. *Valentine*, 74 Ohio App.3d at 118, 598 N.E.2d at 87–88.

Here, while the evidence to be seized was capable of being destroyed, there is nothing in the record to indicate that the officers suspected that the occupants were trying to destroy evidence. Further, neither the testimony of the officers nor the search warrant's supporting affidavit contains facts or circumstances upon which a reasonable belief could be founded that the suspected occupants of the home would be armed or dangerous.

In conclusion, we find that the officers waited an insufficient period of time before entering the appellant's home and that there were no exigent circumstances present which would justify their noncompliance. For these reasons, we find that the manner in which the search warrant was executed was unreasonable

**662**

and, as a consequence, the evidence seized as a result thereof should be suppressed.

Accordingly, the appellant's assignment of error is well taken and is sustained.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we find merit to the appellant's assignment of error.

*Judgment reversed.*

WALTERS and THOMAS F. BRYANT, JJ., concur.